JOHN BAIRD, Respondent, *v.* CORNELIUS DALY, Appellant.

A scow partially loaded with cattle, belonging to plaintiff, while being towed across the St. Lawrence river by defendant's steam-tug was partially swamped and some of the cattle drowned. In an action to recover damages, plaintiff's evidence tended to prove that the injury was caused by the improper rate of speed of the tug. Defendant claimed and gave evidence tending to show that it resulted solely from the unsafe condition and improper management of the scow. After plaintiff had proved by the owner of the scow that she was capable of carrying a heavier load than she had at the time, that there was no difficulty in towing her at a safe rate of speed, and that she had frequently been towed before and since the accident, the witness was asked, upon cross-examination, how many times the scow had been sunk by accident. This was objected to, and objection was sustained. *Held* (CHURCH, C. J., dissenting), error; that the evidence was proper to qualify the witness' testimony upon the direct-examination, and also to discredit him.

Plaintiff was allowed to prove, under objection and exception, that the scow was towed at a less rate of speed after the accident than before. *Held* (CHURCH, C. J., dissenting), error.

Also, *held* (CHURCH, C. J., dissenting), that it was error to refuse to allow defendant to prove by a witness competent to speak that the scow was unseaworthy; that it was a proper subject for the opinion of an expert.

(Argued February 14, 1877; decided February 23, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for the loss of some cattle drowned by the partial swamping of a scow in which they were, and which was being towed across the St. Lawrence river by plaintiff's steam-tug. It is reported upon a former appeal in 57 New York (p. 236).

The facts sufficiently appear in the opinion.

*Samuel Hand* for the appellant. The question to defendant's witness, whether the scow was seaworthy, was improperly excluded. (*Moore* v. *Westervelt*, 27 N. Y., 234; *Curtis* v. *Gano*, 26 id., 426; *Price* v. *Powell*, 4 id., 322; *Rust* v.

*Eckler*, 41 id., 488.)   The court erred in allowing plaintiff to show that the scow was towed at a less rate of speed after the accident. (*Dougan* v. *Champ. Tr. Co.*, 56 N. Y., 1.)   The court erred in allowing the question to the witness Nicholas Cavanaugh, "was there any difficulty whatever in towing her at such a velocity that she would have been safe?" (*Cleveland* v. *Stbt. Co.*, 5 Hun, 529; *Mayor, etc.*, v. *Pentz*, 24 Wend., 668; *Teall* v. *Barton*, 40 Barb., 137.)

*B. H. Vary* for the respondent.   The testimony of Nicholas Cavanaugh as to the seaworthiness of the scow was properly received. (1 Greenl. Ev. [Redf. ed.], § 440; *Price* v. *Powell*, 3 N. Y., 322.)

ALLEN, J.   The evidence on the part of the plaintiff tended to prove that the foundering of the scow, and the consequent loss of and damage to the cattle of the plaintiff making a part of the freight, was caused solely by the improper and reckless rate of speed at which the scow was dragged through the water by the steamer having her in tow.   On the other hand the defendant gave much evidence to prove that the rate of speed by the tow was low and not unusual or improper; that the scow was in an unfit condition for the service; did not float level upon the water, but was down several inches by the head and partially filled with water; that she steered wildly, diverging from her course and the wake or line of the tug twenty-five or thirty feet on either side, and had not at the time of the accident a competent person at the helm, and that the loss and injury was caused solely from the condition and management of the same, and those having it or the cattle in charge, and without fault on the part of the tug.   Upon the whole case, it was at least doubtful whether the sinking of the scow was attributable in whole or in part to the action of the tug, or whether it resulted from other causes.   It was a proper case for a jury, and a verdict either way would not have been without support from the evidence, and the testimony was so decided, and of such apparent weight in favor

of the claims of the respective litigants that it was quite evident that very slight circumstances might have turned the scale in favor of either.

It follows that we cannot say that the exclusion or admission of any of the evidence to which objection was taken upon the trial, however slight or of little weight it may seem, may not have influenced the result, and if error was committed either in admitting or rejecting evidence against the objection and exception of the defendant, a new trial should be had. It is necessary, therefore, to examine with some care the various objections and exceptions which are presented by the counsel for the appellant. It should be premised that no claim is made that the defendant is liable unless his negligence was the sole cause of the disaster. No question is made as to his liability for loss occasioned in part by his negligence and in part by the negligence of the owner of the scow without fault on the part of the plaintiff. We therefore do not consider the relation of the parties except upon the theory upon which the action was tried and upon which the plaintiff rests his claim, viz., the negligence of the defendant and those in charge of the tug as the sole cause of the loss.

The condition of the scow, her state of repair, her seaworthiness and fitness or unfitness for the services, whether the accident was imputable to defects in the scow, or any unskillfulness in her management and navigation, were circumstances bearing more or less directly upon the principal question at issue. The condition of the scow or any want of skill or care in her management were immaterial, except as they caused or contributed to the injury, or tended to prove that the loss was not caused by the negligence or want of skill or care in the management of the tug. These and other facts proved, or in respect to which evidence was given, were all proper matters for the consideration of the jury, in determining the cause of the disaster.

There are several questions upon the admissibility of evidence which may be regarded as border questions. Some latitude was properly allowable to both parties in proving the

condition of the scow, her history and former use, as her then fitness for the service or seaworthiness for that particular duty had, under the circumstances, an important bearing in determining the actual cause of the loss. The plaintiff, under objection, did prove by the owner of the scow, and with a view of establishing the fact that she was a safe conveyance, fit for the carriage of freight, and safe to be towed in those waters, the facts connected with her condition at that time, that she was capable of carrying a heavier load than was then loaded upon her ; that she had not two-thirds of a load ; that there was no difficulty in towing her at such velocity ; that she would have been safe, and that she had been towed frequently before and since the accident. With these statements in evidence, it was competent for the defendant to break their force and destroy their effect, by showing, upon a cross-examination or otherwise, that she had not always been towed safely across the channel, and that she had encountered similar disasters upon the occasions to which reference had been made, or upon other occasions. Any evidence that would tend to qualify these statements, and show that they did not necessarily establish the seaworthiness of the scow, was competent. Had it been proved that she had repeatedly foundered or been sunk when being properly and carefully towed, it would have gone far to destroy the effect of the evidence of what she had before accomplished. The question, therefore, in cross-examination, to the same witness, asking how many times she had been sunk by accident, that is, in the course of her employment, without intent to sink her, as was done in the fall of each year, was competent, and should have been answered. There was no objection to the form of the question, and the facts which might have been elicited were material to the issue, and especially material and proper on cross-examination, and in answer to the facts called out on the direct-examination, as well as to discredit the witness. Had it appeared, and we cannot say it would not have appeared, that she had foundered on every alternate trip she had made, or repeatedly and frequently, the evidence that

she had been repeatedly towed in these waters, and had
carried heavier loads, would have been overthrown, and
the inference that she was a safe boat in a tow would
have been destroyed. The question should have been
answered. It was, also, error to allow the plaintiff to
prove that the scow was towed at less speed after the
disaster than before. It authorized the jury to infer
that from the fact that the rate was reduced after the
accident, that the rate of speed before was greater than should
have been allowed or then was proper. Admitted under
objection, the jury may have regarded it as a practical admis-
sion that the former rate of speed was negligent and careless,
and that in this respect the defendant had recklessly and care-
lessly performed his duty. But the altered circumstances
were sufficient of themselves to account for the different rates
of speed. They were so dissimilar that a comparison of the
speed on the different parts of the trip should not have been
permitted. During the first half of the voyage, and until
the sinking of the scow she was floating on the water, and as
is claimed, in a fit condition to be towed at the usual speed.
After the disaster she was filled with water, substantially
water-logged, and was dragged through the water with less
ease. She presented a greater resistance to the water, and the
same power exerted would not move over the same distance
in the same space of time, and the hazard of sinking her to
the bottom in deep water, or enhancing the damages already
sustained was more evident and imminent, and called for
greater caution. This evidence may have affected the result.
We cannot say it did not.

It was competent for the defendant, and he should have
been permitted, to show by the witness Hayes that the scow
was unseaworthy, that is, unfitted and unsafe for the service
in which she was engaged, and unsafe to be taken in tow.
The jury were non-experts, and with every fact which would
enable a skilled man to determine the question of seaworthi-
ness, it by no means follows that they would make the proper
inference, and arrive at a correct conclusion. The witness

should have been permitted to answer the question put upon this subject. (*Moore* v. *Westervelt*, 27 N. Y., 234.)

There are other questions upon the evidence, but as for the errors already considered the judgment must be reversed, it is not necessary to consider them.

The judgment must be reversed, and a new trial granted. All concur, except CHURCH, Ch. J., dissenting, and MILLER, J., not voting.

Judgment reversed.